**IN THE UNITED STATES DISTRICT COURT,**

**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| Shariese Abdullah, | : | |
| in her individual capacity, | : | |
| *Plaintiff,* | : | |
| v. | : | |
| | : | Case No.  1:21-cv- 19256 |
| | : | |
| | : | |
| Rowan University and | : | JURY TRIAL DEMAND |
| Mr. Noah Weinstein in his individual | : | CIVIL ACTION-LAW |
| capacity, | : | |
| *Defendant.* | : | |

## VERIFIED COMPLAINT

Plaintiff by and through their undersigned attorneys, brings this Complaint against the above-named Defendants, agents, and successors in office, to safeguard her rights under the United States Constitution, State and Federal law, and in support thereof alleges the following:

## PRELIMINARY STATEMENT

1. Ms. Shariese Abdullah (the "Plaintiff")  is currently a student in good standing, in her fourth year of her doctoral program, at Rowan University (the "University" or the "Defendant").

2. Specifically, Ms. Abdullah is completing a doctoral degree in educational leadership (Ed.D.).

1

3. The University has subjected Ms. Abdullah to ongoing and continuous discrimination on the basis of her disability status, race, sex, and gender.

## JURISDICTION AND VENUE

4. This court has jurisdiction under 28 U.S.C. §1331, as the causes of action contained herein invoke federal question jurisdiction, as Plaintiffs bring claims arising under federal law.

5. This court has supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367.

6. Venue for this action properly lies in this Judicial District pursuant to 28 U.S.C. §1391(b) because the events that give rise to the claims in this action occurred in this District.

## PARTIES

### Plaintiffs

7. Plaintiff, Ms. Abdullah, individually, is an adult residing at 107 Redding Circle Princeton, New Jersey 08540.

### Defendants

8. Defendant Rowan University is a public university and federal funds recipient, believed to be doing business and with its principle offices at 201 Mullica Hill Road, Glassboro, New Jersey 08028.

9. Defendant Noah Weinstein is an adult individual who is employed by Rowan University, and who is believed to be doing business at 201 Mullica Hill Road, Glassboro, New Jersey 08028.

## **FACTUAL ALLEGATIONS**

10. Ms. Abdullah is a doctoral student in her fourth year, where she is completing her Ed.D. She is currently enrolled as a student in good standing at Rowan University's Educational Graduate program. In fact, staff have even commented that her dissertation work is "Ph.D. quality." She began her doctoral program in 2018. She has attended the University since 2012.

11. Ms. Abdullah is a black woman who is diagnosed with several disabilities, which include, *inter alia*, epilepsy, a cognitive disability, and generalized anxiety, which resulted from brain surgery. Ms. Abdullah also currently suffers from a concussion, in addition to her chronic epilepsy condition, which is a subsequent disabling condition that interferes with her life function and education.

12. Additionally, Ms. Abdullah is a member of the LGBTQIA community.

13. To meaningfully access her curriculum and education, Ms. Abdullah relies on several disability accommodations. For example, she relies on both oral and written instructions, large-font on printed materials, audio and visual aides. Notably, these accommodations do not materially alter the nature and function of the program.

14. Ms. Abdullah has a 504 accommodation plan through the University. At all times relevant, Ms. Abdullah cooperated with the University in securing accommodations through the 504 plan since 2012 as a masters student.

15. During the fall semester, 2019, University employee, Mr. Noha Weinstein, sexually harassed/inappropriately touched Ms. Abdullah. Mr. Weinstein is the University's disability coordinator. Here, Mr. Weinstein grabbed Ms. Abdullah to look at the shape of her breasts/look down down her shirt, and exclaimed, "look at those." In other words, he accosted and forcibly grabbed Ms. Abdullah, just so he could look at the shape of her breast.

16. Starting in or around September 2020, the University refused to provide or to allow Ms. Abdullah to use the disability accommodations. Again, these accommodations are part of the agreed-upon 504 plan.

17. Throughout the spring semester 2021, Abdullah renewed her requests for these accommodations. The University, however, refused to work with her to implement the same.

18. Because the University refused to provide these accommodations, the University is denying Ms. Abdullah access to her program on the basis of her disability.

19. The University further discriminates against Ms. Abdullah when it refuses to meet with her to discuss putting in place disability accommodations. This is part of a pattern of ongoing deliberate indifference to Ms. Abdullah's disability.

20. On March 6, 2021, Ms. Abdullah met with Dr. Jordan-Cox, to discuss accommodations for disabilities and oral instruction. This included the University putting in place a written- and oral-instruction system for her cognitive disability. Here, she was humiliated and not provided with large print, limited oral instruction. Moreover, she reports that this amounted to disability-based bullying.

21. From March 2021 to June 30, 2021 Ms. Abdullah had several academic and accommodation issues with Dr. Jordan-Cox, which were not addressed by the Education Department nor the Chair. As such, the University allowed these accommodation issues to remain unresolved. Around this time, the University dismissed, without a full investigation, a grade and faculty complaint. Here, the University dismissed the complaint without a full investigation related to issues of noncompliance with respect to the accommodations, intimidation, and demeaning language by staff.

22. Moreover, the University refused to put these accommodations in place nor address Abdullah's complaint regarding Dr. Jordan-Cox and her professional conduct.

23. On September 1, 2021, Plaintiff met with the Dean of the College of Education to discuss implementing her accommodations. At this meeting, Plaintiff requested several accommodations, which included the color coding. The Program Coordinator, then, requested a follow-up meeting to discuss these accommodations for September 17. The Program Coordinator, however, canceled the September 17 meeting. The Plaintiff asked

to reschedule the meeting for September 27, to which the Coordinator agreed. However, the Program Coordinator also canceled that meeting.

24. To date, Rowan University has refused to meet with the Plaintiff on several occasions.

25. In fact, the University tends to cancel these meetings at the last minute. Here, Ms. Abdullah has to arrange for disability-based transportation services. This involves re-arranging her entire schedule. By canceling the meetings at the last minute, the University is further inconveniencing and disrupting Ms. Abdullah's time away from campus, which, in turn, interferes with her ability to complete research and her dissertation.

26. The University has canceled several meetings, which continues to prolong Ms. Abdullah's academic progress and limits the implementation of needed accommodations. Here, Ms. Abdullah needs to meet with the University to specify how they will be implementing her disability accommodations and for her academic progress and completion implementing a consistent academic schedule is imperative to her learning.

27. Because the University refuses to meet with Ms. Abdullah, it has not been able to implement her much-needed accommodations.

28. Absent these accommodations, Ms. Abdullah is unable to complete her dissertation.

29. By refusing to meet with Ms. Abdullah and to work with her to develop/implement accommodations, the University is excluding her from her education. These accommodations are necessary for her to gain access to her education.

30. For example, because of Ms. Abdullah's seizures and brain surgery, she needs to rely on color coding to read. This helps her navigate texts and would allow her to work through the writing and editing process of her dissertation. Because the University refuses to work with her to implement this accommodation, she cannot meaningfully participate in her dissertation process.

31. In addition, Ms. Abdullah requires oral instructions to process information. Here, she has requested that the University simply provide her with oral instructions for her dissertation and editing process. These oral instructions would allow her to meaningfully participate in and complete the dissertation process. The University refuses to implement this simple accommodation.

32. Moreover, since May 2021 Ms. Abdullah has been trying to complete her visual dissertation autoethnography, which requires the university's guidance and assistance. The university has tried numerous times to deviate Ms. Abdullah from her dissertation *Beyond BlackLivesMatters: The Autoethnography of a Black Disabled Graduate Female Student with Multiple Hidden Disabilities.*

33. Furthermore, Ms. Abdullah requested a large print on all materials, but the University has refused to provide her with the same.

34. The University further compounded the disability-based discrimination when Mr. Weinstein subjected Ms. Abdullah to a hostile learning environment and disability-based harassment. Starting in the fall semester 2019 and continuing until present, Mr. Weinstein

has made numerous, disparaging remarks to Plaintiff in response to her requesting disability accommodations. For example, Mr. Weinstein sarcastically responded to Plaintiff, "why are you still here? You should be gone now." Additionally, whenever Ms. Abdullah would visit the Disability Services office, Mr. Weinstein would complain that he had to help Ms. Abdullah obtain her accommodations. For example, when Ms. Abdullah requested accommodations, Mr. Weinstein would snap, "what are you doing to me!" Mr. Weinstein also would bark at her, "you don't need anything," when she would request assistance in securing accommodations. This made Ms.Abdullah feel unwelcome and chilled her ability to meaningfully request accommodations and to participate in her education. Mr. Weinstein has made these comments to the Plaintiff in 2019 and continuing until the present.

35. Based on information and belief, together with Mr. Weinstein's own bragging, he holds himself out as the "mascot" of Rowan University; something he has made known to students, such as the Plaintiff, whenever they seek his help and when he tauntingly refuses the same. Plaintiff understands Mr. Weinstein's boasting to mean that he is somehow exempt from following anti-discrimation and sexual harassment laws; that the University will allow him to *get away* with this conduct.

36. Often Ms. Abdullah needed additional information regarding scheduling and transferring classes, and after completing her first year, she met with the Director of Disability Resources John Woodruff and then chair of the Education department Dr. Walpole to

clarify transferring credits. The chair of the department stated, while laughing, "I did not

think you were a good fit for our program" Dr. Walpole even suggested that Ms.

Abdullah had bad academic standing stating, "you have had several incompletes on your

transcript, which was false. Ms. Abdullah maintained good standing as a student. This

incident was intimidating and degrading, which caused her emotional distress. Although

the Director of Disabilities was in the same room during the course of the meeting with

Dr. Walpole, then the chair of the Education department, the situation was, nonetheless,

humiliating and intimidating; Mr. Woodruff did not advocate for the Plaintiff.

37. Ms. Abdullah alerted Mr. Woodruff  about discriminatory actions and language and after

she met with him in a confidential meeting and  stated, "I do not want to handle this

internally." Mr. Woodruff, then, without the Plaintiff's consent, discussed everything that

transpired in the meeting with Student Compliance.

38. In addition, whenever Ms. Ms. Abdullah has spoken with staff about receiving disability

accommodations, they have refused to take her request seriously. On one occasion, staff

laughed and joked around; rather than substantively discussing development and

implementation of accommodations with Ms. Abdullah. This only made her feel more

unwelcome as a person with a disability; that her requests for accommodations are a

"joke."

39. On other occasions, when Ms. Abdullah  requested accommodations, and the staff told

her "I can only do so much, you have to talk for yourself"; " I can't do much. It is up to

the professor." In other words, staff, clearly, have refused to assist her with obtaining reasonable accommodations.

40.  Ms. Abdullah has had limited access and assistance during her last year of doctoral class and dissertation process. Hence, when Ms. Abdullah asked a tenured professor, Dr. Johnson, to assist with her dissertation process, Dr. Johnson,  responded, "I can't help you because I am a white female and I am not disabled; go seek a black female. I can't identify." Due to Dr. Johnson's authority, her colleagues also replied by saying, "I am also White and not disabled"; "I am Asian, but, still am not disabled. I think you should find Dr. Shealey, who is a black female and specializes in special education." Hence, Dr. Johnson and her colleagues refused to help Ms. Abdullah specifically because she is both black and because she is disabled. Because Dr. Johnson and her colleagues refused to help Ms. Abdullah, she was unable to meaningfully access her education, which included receiving accommodations, equal access, and inclusive educational opportunities similar to her classmates.

41. Staff in Rowan's Education department have attempted to dissuade Ms.Abdullah from writing about race issues in her dissertation, because discussing race "is too controversial." Dr. Johnson, also asked her "Why is your story [about race] so important?". Here, Ms. Abdullah's dissertation was about her life and educational experience as a black, disabled, female, graduate student.

42. Ms. Abdullah adds that the University has employed  several *dog whistles*, which includes assigning two chairpersons to her dissertation, when it is standard to only have one chairperson. In fact, none of the white students receive this extra supervision.

43. Ms. Abdullah sought to use the University's internal complaint procedures. Despite using this procedure, the University dismissed her complaint.

44. This Complaint followed.

## COUNT 1
### DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT--denied the benefits of educational services on the basis of disability.
*Ms. Abdullah v. All Defendants*

45. Ms. Abdullah hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

46. Defendants discriminated against, and denied Plaintiff, the benefits to her program, under the Americans with Disabilities Act when:

   a. Ms. Abdullah is a qualified individual with a disability, as she has both a record of disability and, more specifically, has been diagnosed with several disabilities. In fact, Plaintiff, at all times relevant to the instant matter, has informed the University of her disabilities, which include, *inter alia*, epilepsy, a cognitive disability, anxiety, and a concussion.

   b. The University is believed to be a federal funds recipient.

c.  The University has denied Plaintiff the benefits of her program and has subjected

her to disability based discrimination, which included, *inter alia*, refusing to

provide and implement her accomdations. These accommodations included, *inter*

*alia*, enlarged font, verbal instructions, and allowing her to use color coding. The

University refused to implement or to allow her to use these accommodations.

d.  Ms. Abdullah required these accommodations to meaningfully access and to

participate in her education. As a direct and proximate result of the University

refusing the put these accommodations in place, she was unable to access her

course materials and research. Furthermore, the University's failure to provide

these accommodations, has interfered with and unreasonably delayed her

dissertation process.

e.  The University additionally refused to meet with the Plaintiff to work with her to

develop and implement these accommodations.

f.  The University has further discriminated against the Plaintiff by subjecting her to

a hostile learning environment and disability-based harassment. For example, Mr.

Weinstein subjected Ms. Abdullah to a hostile learning environment and

disability-based harassment. Starting in the fall semester 2019 and continuing

until present, Mr. Weinstein has made numerous, disparaging remarks to Plaintiff

in response to her requesting accommodations. For example, during the summer

semester 2021,  Mr. Weinstein sarcastically responded to Plaintiff, "why are you

still here? You should be gone now." Additionally, whenever Ms. Abdullah would visit the Disability Services office, Mr. Weinstein would complain that he had to hear Ms. Abdullah's stories related to unfair treatment. For example, when Ms. Abdullah requested assistance from the Disability Resource office, Mr. Weinstein would snap, "what are you doing here, again!" Mr. Weinstein also would bark at her, "you don't need anything," when she would request assistance in securing accommodations. This made Ms. Abduallah feel unwelcome and chilled her ability to meaningfully request accommodations and to participate in her education.

g.  In addition, whenever Ms. Ms. Abdullah has spoken with staff about receiving disability accommodations, they refused to take her request seriously. On one occasion, staff laughed and joked around, rather than substantively discussing development and implementation of accommodations with Ms. Abdullah. This only made her feel more unwelcome as a person with a disability; that her requests for accommodations are a "joke."

h.  On other occasions, when Ms. Abdullah requested accommodations, staff have told her "I'm not here to help you" or "it's not my job to help you."

i.  The denial of services and discrimination resulted from the Defendant's deliberate indifference and refusal to accomdate and grant the Plaintiff access to the program.

47. The University showed its contempt for Ms.Abdullah and her disability when they denied her access to the School and to the program multiple times, therefore, *barring her at the schoolhouse gate.*

48. As a direct and proximate result of Defendants' deliberate indifference and intentional discrimination, the Defendants denied Ms. Abdullah the benefits of her program.

49. Wherefore, Ms. Abdullah prays for relief against the Defendants as hereinafter set forth in the prayer for relief.

**COUNT 2**
**DISCRIMINATION UNDER § 504 OF THE REHABILITATION ACT**
*Ms. Abdullah v. All Defendants*

50. Ms. Abdullah hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

51. Defendants discriminated against, and denied Plaintiff, the benefits to her program, under the Rehabilitation Act when:

   a. Ms. Abdullah is a qualified individual with a disability, as she has both a record of disability and, more specifically, has been diagnosed with several disabilities. In fact, Plaintiff, at all times relevant to the instant matter, has informed the University of her disabilities, which include, *inter alia*, epilepsy, a cognitive disability, and a concussion.

   b. The University is believed to be a federal funds recipient.

c. The University has denied Plaintiff the benefits of her program and has subjected her to disability based discrimination, which included, *inter alia*, refusing to provide and implement her accomdations. These accommodations included, *inter alia*, enlarged font, verbal instructions, and allowing her to use color coding. The University refused to implement or to allow her to use these accommodations.

d. Ms. Abdullah required these accommodations to meaningfully access and to participate in her education. As a direct and proximate result of the University refusing the put these accommodations in place, she was unable to access her course materials and research. Furthermore, the University's failure to provide these accommodations, has interfered with and unreasonably delayed her dissertation process.

e. The University additionally refused to meet with the Plaintiff to work with her to develop and implement these accommodations.

f. The University has further discriminated against the Plaintiff by subjecting her to a hostile learning environment and disability-based harassment. For example, Mr. Weinstein subjected Ms. Abdullah to a hostile learning environment and disability-based harassment. Starting in the spring semester 2020 and continuing until present, Mr. Weinstein has made numerous, disparaging remarks to Plaintiff in response to her requesting accommodations. For example, Mr. Weinstein sarcastically responded to Plaintiff, "why are you still here? You should be gone

now." Additionally, whenever Ms. Abdullah would visit the Disability Services office, Mr. Weinstein would complain that he had to help Ms. Abdullah obtain her accommodations. For example, when Ms. Abduallah requested accommodations, Mr. Weinstein would snap, "what are you doing to me!" Mr. Weinstein also would bark at her, "you don't need anything," when she would request assistance in securing accommodations. This made Ms. Abduallah feel unwelcome and chilled her ability to meaningfully request accommodations and to participate in her education.

g.  In addition, whenever Ms. Abdullah has spoken with staff about receiving disability accommodations, they refused to take her request seriously. On one occasion, staff laughed and joked around, rather than substantively discussing development and implementation of accommodations with Ms. Abdullah. This only made her feel more unwelcome as a person with a disability; that her requests for accommodations are a "joke."

h.  On other occasions, when Ms. Abdullah requested accommodations, staff have told her "I'm not here to help you" or "it's not my job to help you."

i.  The denial of services and discrimination resulted from the Defendant's deliberate indifference and refusal to accomdate and grant the Plaintiff access to the program.

52. The University showed its contempt for Ms.Abdullah and her disability when they denied her access to the School and to the program, therefore, *barring her at the schoolhouse gate.*

53. As a direct and proximate result of Defendants' deliberate indifference and intentional discrimination, the Defendants denied Ms. Abdullah the benefits of her program.

54. Wherefore, Ms. Abdullah prays for relief against the Defendants as hereinafter set forth in the prayer for relief.

**<u>COUNT 3</u>**
**DISCRIMINATION UNDER THE CIVIL RIGHTS ACT OF 1964 ON THE BASIS OF RACE.**
*Ms. Abdullah v. Rowan University*

55. Ms. Abdullah hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

56. Plaintiff alleges that the Defendant violated her rights under Title VI when it discriminate against her on the basis of her race when:

    a.  42 U.S.C. 2000d, which is Title VI of the Civil Rights Act of 1964, affirms, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

    b.  The University is believed to be a federal funds recipient.

c.  Ms. Abdullah is a black student and, as such, is entitled to attend school absent race-based discrimination.

d.  The University subjected Ms. Abdullah to disparate treatment and racial discrimination. Here, when Ms. Abdullah reported her disability to concerns to Dr. Anne Johnson, she responded, "I can't help you because I am a white female and I am not disabled; go seek a black female." Here, Dr. Johnson and colleagues refused to help Ms. Abdullah specifically because she is both black and because she is disabled. Because Dr. Johnson and her colleagues refused to help Ms. Abdullah, she was unable to meaningfully and equally access her education, which included receiving accommodations for her dissertation.

e.  Staff have attempted to dissuade Ms. Abdullah from writing about race, ableism, and critical race theory issues in her dissertation, because discussing race and her experiences as a black, disabled, female, graduate student "is too controversial."

f.  Ms. Abdullah adds that the University has employed  several *dog whistles*, which includes assigning two chairpersons to her dissertation, when it is standard to only have one chairperson. In fact, none of the white students receive this extra supervision.

57. The Defendant's deliberate indifference to the ongoing racial discrimination has denied Ms. Abdullah the benefits of her education.

58. The Defendant's deliberate indifference to the ongoing racial discrimination is the direct and proximate cause of the Plaintiff's harm.

59. Wherefore, Ms. Abdullah prays for relief against the Defendants as hereinafter set forth in the prayer for relief.

**COUNT 4**
**SEX AND GENDER DISCRIMINATION UNDER TITLE IX**
*Ms. Abdullah v. All Defendants*

60. Ms. Abdullah hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

61. Title IX, provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681.

62. Based on information and belief, the University is a federal funds recipient.

63. At all times relevant, Ms. Abdullah was a student, who was eligible to attend the University. Furthermore, at all times relevant, Ms. Abdullah attended the University. Specifically, Ms. Abdullah has attended, and continues to attend, the University from 2012 through the date of filing.

64. The University and Mr. Weinstein subjected Ms. Abdullah sex- and gender-based discrimination, together with a hostile learning enviroment based on the same, when:

   a. Ms. Abdullah is a female student and, as such, is entitled to attend school absent sex- and gender-based discrimination.

b.   The University discriminated against Ms. Abdullah, based on her sex and gender, and was delebiratly indifferent to this discrimination.

c.   Mr. Noha Weinstein, during the fall 2019 semester, grabbed Ms. Abdullah, looked down at her breasts/down her shirt, and exclaimed, "look at those." Additionally, Mr. Weinstein would make comments about the Plaintiff's clothing. Here, Ms. Abdullah felt violated when Mr. Weinstein made an unconsented, sexual touching of her person and commented on her breasts.

d.   The University failed to address any of Mr. Weinstein's sexually-violative conduct.

e.   The University had an obligation to safeguard Ms. Abdullah from Mr. Weinstein's sexual advances/inappropriate touching.

65. The University's deliberate indifference to the ongoing sex- and gender-based discrimination has denied the Plaintiff the benefits of her education. As such, the University's conduct is the direct and proximate cause of the Plaintiff's damages.

66. Wherefore, Ms. Abdullah prays for relief against the Defendants as hereinafter set forth in the prayer for relief.

**COUNT 5**
**NEW JERSEY LAW AGAINST DISCRIMINATION**
*Ms. Abdullah v. All Defendants*

67. Ms. Abdullah hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

68. Defendants denied the Plaintiff the benefits to her program under the New Jersey Law Against Discrimination ("NJLAD") when:

   a. The NJLAD prohibits discrimination on the basis of race and disability. <u>N.J. Stat. Ann.</u> § 10:1-2.

   b. NJLAD applies to Universities in the State of New Jersey.

   c. Plaintiff is entitled to attend school at the University and is a student in good standing.

   d. The University abridged Plaintiff's rights when it refused to provide her with reasonable accommodations for her disabilities. Again, these accommodations are reasonable and, on balance, do not impose a burden on the University, nor do they alter the function and essence of the program.

   e. When the University and Mr. Weinstein subjected Plaintiff to ongoing, disability-based harassment.

   f. When Mr. Weinstein physically grabbed Ms. Abdullah so he could look down her shirt at her breast.

   g. Furthermore, the University abridged Plaintiff's rights under NJLAD  when it discriminated against her on the basis of her race. Here, when Ms. Abdullah reported her disability to concerns to Dr. Johnson, she responded, "I can't help

you because I am a white female and I am not disabled; go seek a black female."

Here, Dr. Johnson refused to help Ms. Abdullah specifically because she is both

black and because she is disabled. Because Dr. Johnson refused to help Ms.

Abdullah, she was unable to meaningfully access her education, which included

receiving accommodations for her dissertation.

69. As a direct and proximate result of Defendants' deliberate indifference and intentional

discrimination, the Defendants denied Plaintiff the benefits of her program.

70. Wherefore, Ms. Abdullah prays for relief against the Defendants as hereinafter set forth

in the prayer for relief.

### COUNT 6
### NEGLIGENT HIRING, RETENTION, AND TRAINING OF STAFF, AND FAILURE TO TRAIN
*Ms. Abdullah v. Rowan University*

71. Ms. Abdullah hereby realleges all matters set forth in the preceding paragraphs of this

complaint and incorporates them herein.

72. Defendant owed a duty of care to protect students, including Plaintiff, against the

imposition of harm.

73. Defendant had a duty to exercise ordinary care when hiring, training, and supervising

their faculty, staff, program directors, and other persons in the employ of the University.

74. The Defendant had an obligation to train its faculty, staff, program directors, and other

persons in the employ of the University, including Mr. Weinstein.

75. Defendants knew, or should have known, that it was important to screen and only hire faculty, staff, and other personnel who are qualified to supervise and safeguard students from the type of harm caused by Mr. Weinstein. This included screening and training staff to abstain from sexually harassing or making sexual contact with students; grabbing female students' person and looking down their shirt at their breasts; and making sexual comments about their breast.

76. The Defendant's lack of oversight, failure to properly train, failure to supervise, and failure to monitor its faculty, staff, contractors, and their failure to protect vulnerable students, is a direct and proximate cause of Plaintiff's damages.

77. Wherefore, Ms. Abdullah prays for relief against the Defendants as hereinafter set forth in the prayer for relief.

### COUNT 7
**EMOTIONAL DISTRESS**
*Ms. Abdullah v. All Defendants*

78. Ms. Abdullah hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

79. The University and Mr. Weinstein committed the tort of intentional infliction of emotional distress:

    a.  The Defendants acted intentionally and recklessly.

    b.  The Defendants' conduct was extreme and outrageous, exceeding the bounds of decency and, thus, utterly intolerable in civilized society.

    c.  The Defendants, specifically, subjected Plaintiff to emotional harm by subjecting her to ongoing disability-based discrimination; when the University staff and Mr.

Weinstein made disparaging remarks about Plaintiff's disabilities; when Mr.

Weinstein made an unconsented, sexual touching of the Plaintiff; when Mr.

Weinstein pulled/grabbed Plaintiff's shirt and person to look at the shape of her

breasts; when Mr. Weinstein made a comment about the Plaintiff's breast while in

his official capacity as an employee of the University; and when educational

administrators informed the Plaintiff that they could not work with her on the

basis of her race.

d.  The emotional distress Plaintiff suffered is so severe that no reasonable person

could be expected to endure such distress.

e.  The emotional distress caused the Plaintiff to have multiple seizures and

depression.

f.  Plaintiff has suffered damages as a result of the University's and Mr. Weinstein's

conduct.

80. Wherefore, Ms. Abdullah prays for relief against the Defendants as hereinafter set forth

in the prayer for relief.

## **COUNT 8**
### **ASSAULT**
*Ms. Abdullah v. Mr. Noah Weinstein*

81. Ms. Abdullah hereby realleges all matters set forth in the preceding paragraphs of this

complaint and incorporates them herein.

82. Ms. Abduallah asserts that Mr. Weinstein assaulted her when:

    a.   Mr. Weinstein put the Plaintiff in immediate apprehension of harmful and offensive contact.

    b.   Mr. Weinstein intentionally approached the Plaintiff with the express purpose of grabbing her, so he could look at the shape of her breasts.

    c.   By suddenly approaching the Plaintiff, and reaching to grab the Plaintiff, Mr. Weinstein put her in immediate apprehension of harmful and offensive contact.

    d.   Here, when Mr. Weinstein accosted Ms. Abdullah to grab her person, so he could look at the shape of her breasts, he put her in immediate apprehension of harmful and offensive contact.

83. Mr. Weinstein's assault is the direct and proximate cause of the Plaintiff's damages.

84. Wherefore, Ms. Abdullah prays for relief against the Defendants as hereinafter set forth in the prayer for relief.

**COUNT 9**
**BATTERY**
*Ms. Abdullah v. Mr. Noah Weinstein*

85. Ms. Abdullah hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

86. Ms. Abduallah asserts that Mr. Weinstein committed a battery against her when:

    a.  Mr. Weinstein intentionally grabbed her person with the express purpose of looking at the shape of  her breasts.

    b.  Mr. Weinstein made unconsented, harmful and offensive contact with her person by grabbing her person with the express purpose of looking at the shape of her breasts.

87. Mr. Weinstein's battery is the direct and proximate cause of the Plaintiff's damages.

88. Wherefore, Ms. Abdullah prays for relief against the Defendants as hereinafter set forth in the prayer for relief.

## **DAMAGES**

89. Plaintiffs suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of all Defendants, in an amount that shall be proven at the time of trial. These damages include, but are not limited to: damages for general pain and suffering; damages for the loss of enjoyment of life, both past and future; medical and medical-related expenses, both past and future; travel and travel-related expenses, both past and future; emotional distress, both past and future; pharmaceutical expenses, both past and future; and any and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## **PRAYER FOR RELIEF**

WHEREFORE, Ms. Abdullah respectfully prays that the court award her compensatory and

restitutionary damages against Defendants Rowan University and Mr. Noah Weinstein for,

including, but not limited to, psychological treatment, lost wages, loss of future earnings, loss of

enjoyment of life, emotional pain and suffering, interference with her civil rights, and reasonable

attorneys' fees and costs of suit. Furthermore, Ms. Abdullah seeks any and all equitable relief,

together with any and all remedies, that the Court deems just and appropriate.

## **DEMAND FOR A JURY TRIAL**

In accordance with New Jersey and Federal law, Ms. Abdullah hereby demands a trial by

jury on all appropriate issues.

Respectfully submitted,

**MONTGOMERY LAW, LLC**
1420 Locust Street, Suite 420
Philadelphia, PA 19102
***Attorneys for Plaintiffs***

Dated: October 22, 2021                    By: _____

                                               Bradley R. Flynn
                                               NJ Bar ID No. 173362016