**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

SHARIESE ABDULLAH

*Plaintiff*,

v.

ROWAN UNIVERSITY and NOAH
WEINSTEIN, *in his individual capacity*

*Defendants.*

---

No. 1:21-cv-19256-RMB-MJS

**OPINION**

**RENÉE MARIE BUMB, Chief United States District Judge:**

Plaintiff Shariese Abdullah, a disabled doctoral student at Defendant Rowan University, sues the university and Defendant Noah Weinstein claiming, among other things, that Rowan discriminated against her because of her disabilities, race, and sex, and Weinstein sexually harassed her. She brings federal discrimination claims and a host of state-law claims against them. Rowan and Weinstein ask this Court to throw out Abdullah's lawsuit arguing Abdullah's federal claims against them fail. [Docket Nos. 77-78.] They also contend the Court should decline to exercise supplemental jurisdiction over her remaining state-law claims.

This Court has gone to great lengths to afford Abdullah an opportunity to present her case. This Court has allowed her months to retain counsel so she can respond to Rowan's and Weinstein's motions. And when she finally retained counsel, the Court gave her more time. After Abdullah filed her opposition, the Court ordered supplemental briefing because her briefing was inadequate because she had failed to respond to many of Rowan's and Weinstein's arguments supporting dismissal. Despite that Order, Abdullah filed no

supplemental briefing.

Having reviewed the parties' papers and Abdullah's Second Amended Complaint, the Court finds Abdullah has pled enough facts to sustain her Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 (Count One), and Rehabilitation Act (RA), 29 U.S.C. § 794 (Count Two) claims. So the Court **DENIES** Rowan's motion to dismiss those claims. The Court finds Abdullah cannot sustain her remaining federal claims, and therefore **GRANTS** Rowan's and Weinstein's motions to dismiss those claims. The Court dismisses Abdullah's racial discrimination claim under the Civil Rights Act, 42 U.S.C. § 2000d (Count Three), sex and gender discrimination claim under Title IX, 20 U.S.C. § 1681 (Count Four), and state-created danger and procedural due process violation claims under 28 U.S.C. § 1983 (Count Five) **WITH PREJUDICE**. Because Abdullah "concede[s]" her state-law claims (Counts Six through Ten) should be "dismissed with prejudice" for failing to comply with New Jersey's Tort Claims Act, *see* Pl.'s Mem. of Law in Opp'n to Defs.' Mots. to Dismiss 5, 18 (Docket No. 94), the Court dismisses those claims **WITH PREJUDICE** as well.

## I. BACKGROUND

### A. Procedural History

This case has a tortured history. Abdullah started this lawsuit in October 2021, and amended her complaint twice: first in December 2021 and then again in July 2022. [Docket Nos. 1, 10, 25.] In her Second Amended Complaint (SAC), Abdullah claimed Rowan violated the ADA and RA by, among other things, failing to accommodate her as a disabled student. [SAC ¶¶ 52-59 (Docket No. 25).] She also claimed Rowan discriminated against her because of her race, gender, and sex. [*Id.* ¶¶ 62-71.] In addition, she brought a Section 1983 claim against both Rowan and Weinstein, alleging they violated her substantive and

procedural due process rights.  [*Id.* ¶¶ 74-80.]  According to Abdullah, Rowan and Weinstein violated her substantive due process rights through creating a state danger by allowing Weinstein to sexually harass her.  [*Id.*]  Rowan violated her procedural due process rights by conducting a "sham" Title IX investigation into Weinstein's conduct.  [*Id.*]  On top of those federal claims, Abdullah raises a host of state-law claims, ranging from New Jersey's Law Against Discrimination, N.J. Stat. Ann. §§ 10:5-1 *et seq.*, to common-law tort claims for assault, battery, negligent hiring, and so on.  [*Id.* ¶¶ 83-84, 87-91, 94, 97-98, 101-102.]

After Abdullah filed the SAC, Rowan and Weinstein sought leave to move to dismiss. [Docket Nos. 28-29.]    Following a premotion conference, the Court administratively terminated this case, directing Abdullah to "file a status letter informing the Court as to the status of the parties' discussions and what remaining claims [she] intends to pursue consistent with [Federal Rule of Civil Procedure] 11(b)(3)." [Docket No. 40.]  Abdullah then requested a settlement conference.  [Docket No.  41.]  While the parties engaged in mediation, they could not resolve the matter.  [Docket Nos. 50-52.]  Abdullah eventually asked her attorney to withdraw as counsel, and the Magistrate Judge granted her attorney's motion to be relieved.  [Docket Nos. 59, 67.]  Abdullah then asked the Magistrate Judge to appoint her pro bono counsel, which the judge denied.  [Docket Nos. 68, 70.]  The Magistrate Judge then restored this case to the active docket list and directed Rowan and Weinstein to respond to the SAC.  [Docket No. 71.]

A few weeks later, Rowan and Weinstein both filed the pending motions to dismiss. [Docket Nos. 77-78.]  Abdullah repeatedly asked this Court for more time to retain counsel so she could respond to Rowan's and Weinstein's motions.  [Docket Nos. 79, 80.]  This Court granted those requests, giving Abdullah months to secure counsel or respond to the motions.

[Docket Nos. 80, 82, 84.] Eventually, Abdullah retained her current attorney and the Court granted Abdullah more time to oppose Rowan's and Weinstein's motions. [Docket Nos. 90, 93.]

Abdullah finally opposed the motions (although she never addressed Weinstein's motion in her opposition). [Docket No. 94.] Both Rowan and Weinstein filed reply briefs in support of their motions to dismiss. [Docket Nos. 95-96.] After reviewing the papers, the Court found Abdullah's opposition inadequate and directed her to file supplemental briefing to address many issues. [Docket No. 97.] The Court entered the following Order:

> This matter comes before the Court upon Defendants Rowan University's and Noah Weinstein's Motions to Dismiss Plaintiff's Second Amended Complaint (Docket Nos. 77-78), and the Court having reviewed the moving papers, and Plaintiff's opposition thereto, and whereas Plaintiff has asserted that Counts Six through Ten of the Second Amended Complaint should be dismissed with prejudice for failing to comply with New Jersey's Tort Claim Act, see Pl.'s Mem. of Law in Opp'n to Defs.' Mots. to Dismiss 5, 18 (Pl.'s Opp'n Br.) (Docket No. 94), and whereas Plaintiff has not adequately addressed many of Defendants' arguments in support of their motions to dismiss, and for other good cause shown, it is hereby: ORDERED that within 7 days of this Order, Plaintiff shall file a Notice of Dismissal dismissing Counts Six through 10 of the Second Amended Complaint with prejudice in accordance with Federal Rule of Civil Procedure 41; and it is further ORDERED that within 10 days of this Order, Plaintiff shall file a supplemental brief (no more than 10 pages) specifically addressing the following: (1) Why the Court should not dismiss Counts Four (Sex and Gender Discrimination under Title IX) and Five of the Second Amended Complaint (42 U.S.C. § 1983 - State Created Danger Claim) against Rowan given Plaintiff's admission in the Second Amended Complaint that she never notified any Rowan employee or administrator of [Defendant Weinstein's] alleged conduct, see Second Am. Compl. 70(h); (2) Why the Court should not dismiss Count Five of the Second Amended Complaint against Weinstein given Plaintiff's allegation in the Second Amended Complaint that Weinstein is a state actor given his employment at Rowan, see Second Am. Compl. 18; (3) Why the Court should not dismiss Count Three of the Second

4

> Amended Complaint (Violations of the Civil Rights Act of 1964) for failing to address Rowan's arguments that Plaintiff has not established a prima facie case of racial discrimination, and Plaintiff must point to specific allegations in the Second Amended Complaint that establish such a claim; and (4) Why the Court should not dismiss Count Five of the Second Amended Complaint (42 U.S.C. § 1983 - Violation of Procedural Due Process) as abandoned because Plaintiff has failed to address any of Rowan's arguments supporting dismissal of that claim. *If Plaintiff does not file the ordered supplemental briefing, the Court will equate Plaintiff's failure as an abandonment of those claims.* If Plaintiff does file a supplemental brief, Defendants are granted leave to file a reply brief (no more than 10 pages) addressing Plaintiff's supplemental briefing. Given the number of adjournments the Court has granted Plaintiff to secure counsel, and the need for supplemental briefing, the Court administratively terminates Defendants' Motion to Dismiss (Docket Nos. 77-78) and will reinstate and resolve the motions once Plaintiff has complied with this Order.

[*Id.* (emphasis added).]   About a week later, Abdullah's counsel asked for more time to file the ordered supplemental briefing.   [Docket No. 99.]   The Court granted that request and also directed Abdullah's counsel to file the stipulation of dismissal for Abdullah's state-law claims.   [Docket No. 100.]   Despite this Court's Orders, Abdullah never filed the ordered supplemental briefing or the stipulation of dismissal.   Rowan now asks this Court to resolve the pending motions to dismiss "based on the existing briefing record."   [Docket No. 100.]

## B. Abdullah's Claims against Rowan and Weinstein

Abdullah is a Black woman and LGBTQ community member.   [SAC ¶¶ 11-12.]   She also has been diagnosed with epilepsy, a cognitive disability, and generalized anxiety, all stemming from brain surgery.   [*Id.* ¶ 11.]   In addition to her chronic epilepsy condition, she also suffered from a concussion.   [*Id.*]

Abdullah started attending Rowan in 2012 and enrolled in a doctoral program in 2018.   [*Id.* ¶ 10.]   She's currently completing a Doctorate in Educational Leadership (Ed.D.).   [*Id.*]

To access her curriculum and educational instruction, Abdullah relies on several disability accommodations, like oral and written instructions, large-font printed materials, and audio and visual aides.  [*Id.* ¶¶ 10, 13.]  To that end, Abdullah has accommodation plans through Rowan under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.  [*Id.* ¶ 14.]  She has had 504 plans since 2012.  [*Id.*]  For example, Abdullah's 504 plan for the Fall 2021 semester required, among other things, testing accommodations (like extra-time, voice to print software, and so on) and classroom accommodations (like enlarged font size/print, oral directions for assignments, and peer notetaker).[1]  [Pl.'s Mem. of Law in Opp'n to Defs.' Mots. to Dismiss 13, Ex. A (Pl.'s Opp'n Br.) (Docket Nos. 94, 94-1).]

### 1.  Rowan's Handling of Abdullah's Accommodations

In 2018 and 2019, Abdullah experienced seizures while at the university and expressly requested that Rowan undergo training to address and respond to her seizures.  [SAC ¶ 15.]  But, she contends, Rowan refuses to adopt or modify its safety protocols to address Abdullah's seizures.  [*Id.*]

On top of that refusal, Rowan has refused to accommodate her as a disabled student.  Starting in 2019, Rowan's staff "has refused to take her" disability accommodations requests "seriously."  [*Id.* ¶ 16.]  As a disabled student, Abdullah often needs help with scheduling and transferring classes.  [*Id.* ¶ 17.]  After completing her first year as a doctoral student in August 2019, she met with Director of the Office of Accessibility Services, John Woodruff, and then Chair of the Education Department, Dr. Walpole, to clarify the credit transfer process.  [*Id.*]  Abdullah alleges Dr. Walpole stated, while laughing, "I [do] not think you were a good fit for

---

[1] Abdullah submits 504 plans issued by Rowan for the Spring 2021, Summer 2021, Fall 2021, Spring 2022, Fall 2022, and Fall 2023 semesters.

our program." [*Id.*] The doctor suggested Abdullah had bad academic standing, stating, she "had several incompletes on [her] transcript[,]" which Abdullah maintains is false. [*Id.*] Abdullah contends this incident was intimidating and degrading, and although Woodruff was in the room during the meeting with Dr. Walpole, Woodruff did not advocate for her. [*Id.*] Rowan's refusal to accommodate makes her feel unwelcome, as she perceived her requests for accommodations were taken as a "joke" to staff. [*Id.* ¶ 16.]

Sometime in September 2020, Rowan refused to provide or allow Abdullah to use disability accommodations that were part of the agreed-upon 504 Plan. [*Id.* ¶ 19.] This continued into 2021. Throughout the Spring 2021 semester, Abdullah renewed her requests for her accommodations under her 504 plans. [*Id.*] But Rowan "frequently refused" to meet with Abdullah about her requested accommodations. [*Id.*] Sometime in the Spring 2021 semester, Abdullah wanted help from Rowan's Writing Center. [*Id.* ¶ 23.] According to Abdullah, a tutor questioned whether she had a disability. [*Id.*] Abdullah reported that comment to Rowan's Writing Center's supervisor who, according to Abdullah, did nothing and Abdullah could not get help with her writing. [*Id.*]

From January to March 2021, Abdullah had several academic and disability accommodation issues with Professor Jordan-Cox for the Advanced Leadership course. [*Id.* ¶ 24.] To start the Spring 2021 semester, Abdullah supplied her 504 plan to Professor Jordan-Cox seeking to have her accommodations implemented, but the professor "refused." [*Id.* ¶¶ 24-25.] Under her 504 plan, Abdullah was eligible for, among other things, enlarged print and verbal instructions for her assignments. [*Id.*] Abdullah claims that without the enlarged font and verbal instructions, she couldn't access the curriculum and participate in class. [*Id.* ¶ 25.] Abdullah struggled to understand the directions on many assignments and

7

couldn't engage in class the way non-disabled students could because she didn't have a "complete picture" of the directions and learning objectives. [*Id.* ¶ 26.] And given her homework's small font size, she struggled to complete the assignments. [*Id.*]

Abdullah tried to raise her accommodations concerns with Professor Jordan-Cox, but the professor ignored her. [*Id.* ¶¶ 27-28.] Abdullah reported Professor Jordan-Cox's refusal to implement her accommodations to Woodruff. [*Id.* ¶ 29.] But Woodruff refused to intervene, telling Abdullah that he was not going to force the professor to accommodate her. [*Id.* ¶ 30.] Abdullah claims that because she did not receive her accommodations, she was unable to fully benefit from the course and received a lower grade (B-) than she would have if the accommodations had been provided. [*Id.* ¶ 31.] According to Abdullah, a B- is considered below expectations for this graduate program. [*Id.*] Abdullah explains that when her other professors for her remaining Spring 2021 semester classes provided her accommodations, she received "A" grades in those classes. [*Id.*]

In June 2021, Abdullah challenged her B- grade, claiming Professor Jordan-Cox refused to provide her accommodations. [*Id.*] But Rowan staff dismissed her complaint without a full investigation and used intimidation and demeaning language toward her. [*Id.* ¶ 33.] Abdullah spoke to Woodruff, but he was "dismissive" and "condescending" towards her, thereby hindering her ability to engage in the accommodation process. [*Id.* ¶ 33 n.2.]

A few months later, Abdullah met with the Dean of the College of Education to discuss her accommodations. [*Id.* ¶ 34.] At this meeting, Abdullah asked for several accommodations, including color coding. [*Id.*] A program coordinator requested a follow-up meeting a few weeks later to discuss her accommodation requests. [*Id.*] But that meeting (and the rescheduled one) never took place. [*Id.*] According to Abdullah, Rowan repeatedly

cancelled the meetings to discuss her accommodation requests, causing her inconvenience and disruption in her ability to complete her dissertation throughout the 2021-22 academic year.  [*Id.* ¶¶ 35–36.]

Abdullah maintains that she needs her accommodations, like color coding and verbal instructions, to process information so she can fully benefit the educational instruction and complete her dissertation. [*Id.* ¶¶ 37–39.]  But since the Spring 2019 semester, Rowan has refused to implement these accommodations.  [*Id.* ¶ 39.]

### 2.  Weinstein's Inappropriate Conduct

Weinstein is a program assistant in Rowan's Office of Accessibility Services.  [*Id.* ¶ 18.]  Starting in the Fall 2019 semester, Weinstein made inappropriate comments about Abdullah's appearance and clothing.  [*Id.* ¶ 18.]  For example, Weinstein asked Abdullah—in what she describes as a flirtatious tone—"What do you have on?" or "What are you wearing?"  [*Id.* ¶ 18.]  Then, in March 2020, Weinstein grabbed Abdullah to look down her shirt, exclaiming "Look at those[!]"  [*Id.*]

On top of that behavior, from September 2019 through the summer of 2021, Weinstein made disparaging remarks to Abdullah when she sought help with her disability accommodations.  [*Id.* ¶ 40.]   Weinstein responded to Abdullah's requests with comments ranging from, "[W]hy are you still here? You should be gone now[]" to  "[W]hat are you doing to me!"; and, "[Y]ou don't need anything[.]"   [*Id.*]  Those comments made Abdullah feel "unwelcome" and "chilled her ability to meaningfully request accommodations and to participate in her education."  [*Id.*]

### 3.  Abdullah's Doctoral Dissertation Topic

Since December 2020, Abdullah has been trying to complete her visual dissertation

autoethnography, *Beyond BlackLivesMatters* [sic]*: The Autoethnography of a Black Disabled Graduate Female Student with Multiple Hidden Disabilities.* [*Id.* ¶¶ 43, 62(d).] Doing so requires Rowan's guidance and assistance. [*Id.*] Abdullah asked a tenured professor, Dr. Johnson, to help with her dissertation process and topic. [*Id.* ¶ 42.] Dr. Johnson refused, telling Abdullah, "I can't help you because I am a White female and I am not disabled; go seek a Black female. I can't identify." [*Id.*] Dr. Johnson's colleagues similarly replied: "I am also White and not disabled"; "I am Asian, but, still am not disabled. I think you should find Dr. Shealey, who is a Black female and specializes in special education." [*Id.* ¶¶ 42, 45.] Abdullah believes Dr. Johnson tainted the pool of professors by directing other colleagues to not work with her. [*Id.* ¶ 42.] According to Abdullah, Dr. Johnson's refusal to work with her and the professor's interference has prevented her from meaningfully accessing her education, including receiving accommodations, equal access, and inclusive educational opportunities that her classmates have received. [*Id.*] Dr. Johnson once asked Abdullah, "Why is your story [about race] so important?" [*Id.* ¶ 44.] Rowan's staff in the Education Department have tried to dissuade her from writing about race issues because discussing race "is too controversial." [*Id.*] Yet Abdullah maintains her dissertation is about her life and educational experience as a Black, disabled, female, graduate student. [*Id.*] Ultimately, Abdullah worked on her dissertation with other administrators (whom Abdullah claims she's uncomfortable working with). [*Id.* ¶ 45.] Unlike many of her classmates who worked with tenured faculty of their choosing, Abdullah had to work with whomever Rowan selected and often, these individuals did not provide sufficient time to guide her during the learning process. [*Id.*] Abdullah also asserts she was denied the benefit of the expertise of the original faculty she approached and was forced to "settle[]" for less qualified advisors. [*Id.*]

10

Abdullah reported the racial discrimination to Rowan in December 2020.  [*Id.* ¶ 62(h).] And at the start of the Spring 2021 semester, Abdullah filed a complaint with the Office of Civil Rights (OCR).  [*Id.*]  The OCR notified Rowan of its investigation in March 2021, but the university took no corrective action.  [*Id.*]

### 4.  Title IX Investigation into Weinstein's Conduct

During the Fall 2021 semester, Abdullah reported Weinstein's alleged conduct towards her to Rowan that triggered a Title IX investigation into Weinstein.  [*Id.* ¶ 46.]  In April 2022, Rowan employee, Jenna Perez, interviewed Abdullah about her complaint. [*Id.* ¶ 47.]  During this interview, Perez questioned Abdullah about another student who too reported Weinstein for alleged sexual harassment.  [*Id.*]  Abdullah believes Perez was trying to uncover impeachable information about the other complainant because Perez asked questions about Abdullah's "conflicts" with the complainant.  [*Id.*] Abdullah asserts Perez asked largely irrelevant questions since they didn't focus on Weinstein.  [*Id.*] According to Abdullah, Perez' flawed investigation hindered her ability to freely and fairly participate in the Title IX process.  [*Id.* ¶ 48.]  That same month, Abdullah requested a new investigator, but Rowan has neither appointed a new one nor continued its investigation into Weinstein. [*Id.*]

### 5.  Abdullah's Claims against Rowan and Weinstein

Based on the above, Abdullah contends Rowan discriminated against her and was deliberately indifferent to her accommodation needs, thereby denying her the benefit of her educational program.  [*Id.* ¶ 49.]  She also claims she suffered racial discrimination when she could not have her preferred dissertation advisor, as well as sex and gender discrimination, which has interfered with her ability to participate in campus life and her education.  [*Id.*]  To

11

that end, Abdullah claims she now avoids the Office of Accessibility Services to avoid a potential encounter with Weinstein. [*Id.*]

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The party seeking dismissal of the complaint must show it fails to state a claim. *Lesher v. Zimmerman*, 822 F. App'x 116, 119 (3d Cir. 2020). When reviewing a motion to dismiss, courts must accept the complaint's factual allegations as true and afford the plaintiff "every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). Courts will dismiss a complaint if the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor will courts accept "legal conclusions" as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Malleus*, 641 F.3d at 563.

Generally, courts may only consider "the allegations contained in the complaint, exhibits annexed to the complaint[,] and matters of public record." *Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 279 (3d Cir. 2018) (alteration in original) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). But when a complaint references extrinsic documents, courts can consider the documents so long as

they are "undisputedly authentic" and "the complainant's claims are based upon [those] documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016).

## B. Abdullah's ADA and RA Claims

Abdullah brings both ADA and RA claims against Rowan, claiming the university discriminated against her because she is disabled, failed to accommodate her disabilities, and fostered a hostile learning environment.  [SAC ¶¶ 52, 57.]

Both the ADA and RA prohibit disability discrimination.  42 U.S.C. § 12132; 29 U.S.C. § 794.  "Because the same standards govern both . . . RA and ADA claims," courts "may address both claims in the same breath." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009).  To prevail on those claims, Abdullah must show that:  "(1) [she] has a disability, or was regarded as having a disability; (2) [she] was 'otherwise qualified' to participate in school activities; and (3) [she] was 'denied the benefits of the program or was otherwise subject to discrimination because of [her] disability.'" *D.E. v. Cent. Sch. Dist.*, 765 F.3d 260, 269 (3d Cir. 2014) (fourth alteration in original) (quoting *Chambers*, 587 F.3d at 189).  Abdullah cannot succeed on her ADA and RA claims "simply by proving (1) that [she] was denied some service and (2) [she] is disabled." *K.J. v. Greater Egg Harbor Reg'l High Sch. Dist. Bd. of Educ.*, 431 F. Supp. 3d 488, 501 (D.N.J. 2019) (quoting *Andrew M. v. Del. Cty. Off. of Mental Health & Mental Retardation*, 490 F.3d 337, 350 (3d Cir. 2007)).  Rather, she must show that Rowan "failed to provide the service for the sole reason that [she] is disabled." *Id.* (quoting *Andrew M.*, 490 F.3d at 350).

On top of that showing, Abdullah must plausibly allege "intentional discrimination" since she seeks monetary damages.  *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 261 (3d Cir.

2013).  To that end,

> The "intentional discrimination" standard demands proof that, at a minimum, the school district exhibited "deliberate indifference" to the underlying act of discrimination. . . . To show deliberate indifference, a plaintiff must establish "(1) *knowledge* that a federally protected right is substantially likely to be violated . . . and (2) *failure* to act despite that knowledge." [It] "does not require a showing of personal ill will or animosity toward the disabled person," but "must be a deliberate choice, rather than negligence or bureaucratic inaction."

*Shadie v. Hazleton Area Sch. Dist.*, 580 F. App'x 67, 70 (3d Cir. 2014) (citations omitted, second omission in original, emphases in original) (quoting *S.H.*, 729 F.3d at 263).  "Deliberate indifference requires *actual knowledge*; allegations that one would have or should have known will not satisfy the knowledge prong of deliberate indifference."  *S.H.*, 729 F.3d at 266 n. 26 (emphasis in original, citation and internal quotation marks omitted).

Rowan moves to dismiss Abdullah's ADA and RA claims, arguing she has pled no facts establishing intentional discrimination.  [Rowan Mem. of Law in Supp. of Mot. to Dismiss 11 (Rowan Br.) (Docket No. 78-1).]  Rowan contends the SAC fails to allege deliberate indifference.  [*Id.* at 18-19.]  And pointing to this Court's decision in *C.M. v. Pemberton Twp. High Sch.*, 2017 WL 384274 (D.N.J. Jan. 27, 2017), Rowan argues Abdullah has not plausibly alleged that it denied her access to educational benefits because of her disabilities.  [*Id.* at 19.]  Abdullah, in a conclusory fashion, argues she has alleged disability discrimination and points to several of her 504 plans that require, among other things, large font, a note taker, and so on.  [Pl.'s Opp'n Br. at 12-13.] [2]  According to Abdullah, Rowan's failure to provide her the agreed-on 504 accommodations "affected her performance and

---

[2]  Abdullah asserts that she provided the Court with 504 plans that Rowan issued "between 2020 and 2022[.]"  [Pl.'s Opp'n Br. at 13.]  Not so.  Abdullah provides no plan from the 2020 semesters—the earliest 504 plan she provides is for the Spring 2021 semester.  [Pl.'s Opp'n Br. 13, Ex. A.]

ability to properly compose her dissertation." [*Id.* at 13.] She goes onto explain that Rowan made a deliberate choice to discriminate against her because of her disabilities by not providing her those accommodations and then cancelling meetings with her to implement her accommodations. [*Id.* at 13-14.]

Rowan doesn't dispute that Abdullah is disabled or is "qualified" to participate in its educational program. Nor does it dispute that it receives federal funding. Given the 504 plans referenced in the SAC and that Abdullah has provided to the Court, Abdullah has notified Rowan of her disabilities and Rowan has agreed to accommodate them. While Abdullah claims her 504 plans include color coding, *see* Pl.'s Opp'n Br. at 13, Ex. A, none of the 504 plans before this Court mention that accommodation.[3] In any event, the Court must determine whether the SAC, as currently pled, plausibly alleges that: (1) Rowan denied her benefits of an educational program or discriminated her because of her disability; and (2) Rowan acted with deliberate indifference.

Before diving into the merits, the Court makes several observations about Abdullah's allegations supporting her ADA and RA claims.

First, Abdullah makes repeated conclusory allegations about Rowan failing to provide accommodations. For example, Abdullah claims that starting in the Fall 2020 semester, Rowan "refused to provide or to allow" her "to use the disability accommodations." [SAC ¶ 19.] Yet she never identifies those accommodations. Likewise, she claims that throughout the Spring 2021 semester, she renewed "her requests for these accommodations[,]" but Rowan "refused to provide" them. [*Id.* ¶¶ 20-21.] Besides her accommodations for large print

---

[3] Abdullah claims that in September 2021, she "met with the Dean of the College of Education to discuss implementing her accommodations . . . [and] requested several accommodations, which included the color coding." [SAC ¶ 34.] Given the SAC's allegations, Abdullah did not make the color-coding request before the Spring 2021 semester when Abdullah had Dr. Jordan-Cox as a professor.

and verbal instructions (that are included in her 504 plan), *see* SAC ¶¶ 24-25, Abdullah doesn't identify any other accommodations that Rowan supposedly refused to implement in the Spring 2021 semester.

Second, some of Abdullah's allegations may be time-barred since RA and ADA claims have a two-year statute of limitations. *See, e.g.*, *Handley v. Rowan Univ.*, 2022 WL 4115730, at *6-7 (D.N.J. Sept. 9, 2022). For example, Abdullah alleges she suffered seizures in 2018 and 2019, and she requested Rowan to develop a safety protocol to address seizures. [SAC ¶ 15.] According to Abdullah, Rowan never adopted a safety protocol. [*Id.*] She also claims in the Spring 2019 semester, she spoke to Rowan staff about receiving disability accommodations, but the staff "refused to take her request seriously." [*Id.* ¶ 16.] She never identifies what accommodations she requested for that semester. And she claims that at an August 2019 meeting about scheduling her classes, the Chair of the Education Department questioned whether Abdullah was "good fit" for the school's program and suggested she had a "bad academic standing." [*Id.* ¶ 17.] According to Abdullah, Woodruff never supported her at that meeting. [*Id.*] Those allegations all appear to fall outside the two-year statute of limitations. And Abdullah never addresses Rowan's argument that some of her ADA and RA claims are time-barred. [Rowan Br. at 12 n.4.]

That said, after viewing the SAC in light most favorable to Abdullah and giving her the benefit of all reasonable inferences, *see Malleus*, 641 F.3d at 563, the Court finds she has alleged enough facts to state a claim that Rowan denied her educational benefits when Professor Jordan-Cox refused to implement her 504 plan that allows her to have verbal instructions and enlarged print. The Court also finds Abdullah has alleged enough facts to infer intentional discrimination to allow Abdullah's ADA and RA claims based on Professor

Jordan-Cox's refusal to implement her 504 plan to move forward. Abdullah's remaining allegations of disability discrimination are too vague and conclusory. And she hasn't plausibly alleged a hostile learning environment.

**1.  Denial of Educational Benefits or Disability Discrimination**

Abdullah has plausibly alleged Rowan denied her educational benefits because of her disability based on her dealings with Professor Jordan-Cox. Indeed, she alleges that at the start of the Spring 2021 semester, she provided Professor Jordan-Cox with her 504 plan that included accommodations for enlarged print/front and verbal instructions. [SAC ¶¶ 24-25.] Despite having the 504 plan, Professor Jordan-Cox "refused to implement the required accommodations." [*Id.* ¶ 25.] Without the required accommodations, Abdullah struggled to complete "her homework assignments due to the small font size" and could not engage in "the coursework and learning materials" because she could not understand the assignments without verbal instructions. [*Id.* ¶ 26.] Abdullah raised her accommodation concerns with Professor Jordan-Cox but the professor repeatedly ignored her. [*Id.* ¶ 27.] Given Professor Jordan-Cox's refusal to implement her 504 plan, Abdullah reported the professor to Woodruff—the "Supervisor and Director of the Office of Accessibility Services." [*Id.* ¶ 29.] But Woodruff failed to intervene, telling Abdullah, "he was not going to compel the professor to accommodate her." [*Id.* ¶ 30.] Because Professor Jordan-Cox refused to provide Abdullah her accommodations under the 504 plan, Abdullah could not "fully benefit[] from the course[,]" and received a B- in it, which is below expectations in a graduate program. [*Id.* ¶ 31.] According to Abdullah, she received "A grades" in her other Spring 2021 semester courses where the professors implemented her 504 plan. [*Id.* ¶ 31.]

Those allegations are enough to establish disability discrimination under the ADA and

RA.  *See Beam v. W. Wayne Sch. Dist.*, 165 F. Supp. 3d 200, 209-13 (M.D. Pa. 2016) (finding plaintiffs plausibly alleged ADA and RA claims where plaintiffs alleged school district officials "consistently violated [plaintiffs' son]'s Section 504 plan"); *accord Dorsey ex rel. J.D. v. Pueblo Sch. Dist. 60*, 215 F. Supp. 3d 1082, 1090 (D. Colo. 2016) ("[A]llegations that Defendants either intentionally failed to implement the Plan's accommodations, or knowingly allowed them to be violated, sufficiently state a claim for a violation of § 504 solely on the basis of Plaintiff's disability.").  The SAC establishes that Rowan knew Abdullah is disabled and agreed to provide her accommodations (evident by the 504 plans).  And despite knowing about the 504 plan and her need for accommodations, Professor Jordan-Cox refused to implement them.  Without her accommodations, she struggled to understand and complete coursework.  Those facts, if believed, show that Rowan effectively excluded Abdullah from meaningful participation in Professor Jordan-Cox's course or denied her the benefits of it. *Beam*, 165 F. Supp. 3d at 210; *see also Gaudino v. Stroudsburg Area Sch. Dist.*, 2013 WL 3863955, at *9-10 (M.D. Pa. July 23, 2013) (finding plaintiff plausibly stated ADA and RA claims where plaintiff alleged that school district failed to comply with plaintiff's individual education plan that required classroom aide and individualized instruction).

That said, Abdullah's other allegations of disability discrimination are vague and conclusory.  For example, while Abdullah is eligible for a reader/in-class note taker under her 504 plans, *see* SAC ¶ 52(c); Pl.s' Opp'n Br. at 13, Ex. A, she claims Rowan refused to implement those accommodations for the Spring 2021 semester, *see* SAC ¶ 52(g).  That allegation is conclusory.  She never identifies any course for the Spring 2021 semester where a professor or instructor refused to allow her to have a reader or in-class note taker.  In fact, she alleges that except for Professor Jordan-Cox, her other Rowan professors "implemented

her accommodations" for the Spring 2021 semester and that she received "A grades" in those courses. [*Id.* ¶ 31.] Abdullah never alleges Professor Jordan-Cox denied her an in-class reader or note taker.

As another example, she claims Rowan discriminated her by not allowing her to take an "Advanced Leadership" course with a cohort. [*Id.* ¶ 52(i).] Nothing in SAC or the 504 plans before this Court reveal that Rowan agreed to accommodate her disabilities by allowing her to take classes with a cohort of her choosing. Abdullah cannot succeed on ADA and RA claims by merely pointing to her disabilities and Rowan's failure to provide a desired service. *K.J.*, 431 F. Supp. 3d at 501. Rather, she must show that Rowan denied her that service "for the sole reason" that she "is disabled." *Id.* (quoting *Andrew M.*, 490 F.3d at 350).

Lastly, Abdullah claims Rowan continually discriminates against her "by refusing to work with her to develop a seizure safety plan." [SAC ¶ 52(j).] As explained above, the Court questions whether Abdullah's ADA and RA claims based on Rowan's failure to adopt a seizure safety plan are timely.[4] In any event, Abdullah offers no allegation that the university-wide seizure safety training she wants Rowan to adopt is reasonable. *See Mucci v. Rutgers*, 2011 WL 831967, at *21 (D.N.J. Mar. 3, 2011) (explaining that for failure-to-accommodate claims a plaintiff must show, among other things, "that her requests

---

[4] As explained above, ADA and RA claims have a two-year statute of limitations. *Handley,* 2022 WL 4115730, at *6-7. "[A] cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or should have known of the injury upon which its action is based." *Kach v. Hose,* 589 F.3d 626, 634 (3d Cir. 2009) (citation and quotations omitted). Therefore, Abdullah's ADA and RA claims based on Rowan's failure to accommodate her seizures is likely time-barred because she started this lawsuit in October 2021—more than two years after the first alleged "violation" occurred. That said, if Abdullah's 2019 seizure fell outside the two-year limitations period, it would be barred, similarly precluding the 2018 claim from proceeding under the "continuing violation" doctrine. *Randall v. City of Phila. Law Dep't,* 919 F.3d 196, 198-199 (3d Cir. 2019) (explaining the continuing violation doctrine is triggered "when a defendant's conduct is part of a continuing practice" and thus, "so long as the last act [in] the continuing practice falls within the limitations period . . . the court will grant relief for the earlier related acts that would otherwise be time barred" (alteration and omission in original, citations and internal quotation marks omitted)).

for accommodations are reasonable" (quoting *D'Amico v. N.Y. State Bd. of Law Examiners*, 813 F. Supp. 217, 221 (W.D.N.Y. 1993))).

### 2. Intentional Discrimination

Because Abdullah seeks money damages for her ADA and RA claims, she must show that Rowan intentionally discriminated against her—that is, deliberate indifference. *S.H.*, 729 F.3d at 261, 263. So she must plausibly allege Rowan knew that "harm to a federally protected right is substantially likely" and failed "to act upon that likelihood." *Id.* at 263 (citations and internal quotation marks omitted). Again, deliberate indifference requires a showing of "deliberate choice"—"negligence or bureaucratic inaction" are not enough. *D.E.*, 765 F.3d at 269 (quoting *S.H.*, 729 F.3d at 263).

Abdullah has alleged enough facts to infer Rowan's "actual knowledge" of disability discrimination. *S.H.*, 729 F.3d at 266 n. 26. For example, at the beginning of the Spring 2021 semester, Abdullah provided Professor Jordan-Cox with her 504 plan that called for enlarged front and verbal instructions. [SAC ¶¶ 24-25.] Yet the professor refused to implement those accommodations and ignored Abdullah's requests to implement them. [*Id.* ¶¶ 25, 27.] And when Abdullah complained to Woodruff about Professor Jordan-Cox's refusal to follow her 504 plan, Woodruff did nothing. [*Id.* ¶¶ 29-30.] In fact, he told her that "he was not going to compel the professor to accommodate." [*Id.* ¶ 30.] Those allegations, if true, establish that Rowan—through a professor and the head of Office of Accessibility Services—knew that Abdullah's rights to accommodations under her 504 plan were being violated. *See Beam*, 165 F. Supp. 3d at 212 (finding plaintiffs sufficiently alleged deliberate indifference for ADA and RA claims where plaintiffs alleged their son required a 504 plan, the school district knew of plaintiffs' son's disabilities and 504 plan, and failed to develop and implement the 504 plan);

20

*accord Dorsey*, 215 F. Supp. 3d at 1090 (finding plaintiff pled deliberate indifference for RA claim where plaintiff alleged her 504 plan allowed her to eat snacks in class because of her hypoglycemia, plaintiff's teacher knew of the 504 plan, but refused to allow plaintiff to eat snacks and told plaintiff she would not follow the 504 plan).

And those allegations, coupled with Rowan's dismissal of Abdullah's "grade and faculty complaint" about Professor Jordan-Cox's failure to accommodate "without a full investigation[,]" *see* SAC ¶ 33, are enough to infer that Rowan failed to act even though it knew Abdullah's rights under her 504 plan were likely being violated. *See Beam*, 165 F. Supp. 3d at 212. Indeed, Rowan made a "deliberate choice" to allow disability discrimination when Woodruff failed to help Abdullah with her accommodations when she reported Professor Jordan-Cox's refusal to implement her 504 plan. *See S.H.*, 729 F.3d at 263; *see also Dorsey*, 215 F. Supp. 3d at 1090. Her allegation on Rowan's staff's alleged outright dismissal of her complaint about Professor Jordan-Cox's refusal to implement her 504 plan is enough—at this stage—to show the university's deliberate indifference to disability discrimination. Indeed, "[f]ailing to implement [a Section] 504 Plan effectively denies [a disabled student] the rights the statute is meant to protect." *Dorsey*, 215 F. Supp. 3d at 1090. So, taking Abdullah's allegations in the light most favorable to her, the Court finds she has plausibly stated ADA and RA claims based on Professor Jordan-Cox's refusal to implement her 504 plan.

Rowan's reliance on *C.M.* is misplaced. Unlike here, *C.M.* concerned a disability discrimination claim based on peer-on-peer harassment. 2017 WL 384274, at *7. Abdullah claims she suffered disability discrimination when a professor refused to implement her 504 plan and Rowan failed to act on that refusal. And unlike *C.M.*, Abdullah has sufficiently alleged that Professor Jordan-Cox's refusal to implement her 504 plan effectively excluded

21

her from participating or enjoying the benefits of the professor's course. Indeed, without her accommodations, Abdullah struggled with the course material. [SAC ¶ 26.] Thus, the Court denies Rowan's motion to dismiss those claims.[5]

### 3. Hostile Learning Environment Based on Disability Discrimination

Lastly, Abdullah claims Rowan discriminated against her "by subjecting her to a hostile learning environment and disability-based harassment." [SAC ¶ 52(k), (l), (m).] Abdullah asserts that Weinstein and other Rowan staff made inappropriate comments about her disabilities, mocked her, and refused to take her requests for disability accommodations "seriously." [*Id.* ¶¶ 16, 23, 40.] For example, for Weinstein, Abdullah claims he "made numerous, disparaging remarks" to her when she requested accommodations beginning in the Fall 2019 semester and continuing through August 2021, like "why are you still here? You should be gone now[]" and "what are you doing to me! . . . you don't need anything[.]" [*Id.* ¶ 40.] Abdullah never identifies the other Rowan staff who made disparaging remarks toward or about her. Still, she claims a Rowan staff member told her, "'I'm not here to help you' or 'it's not my job to help you.'" [*Id.* ¶ 52(m).]

To prevail on a hostile learning environment claim under the ADA and RA, a plaintiff must show: "(1) that she is a member of a protected group, (2) that she has been subject to unwelcome harassment, (3) that the harassment is based on a protected characteristic, her disability, (4) that the harassment is sufficiently severe or pervasive that it alters the conditions of her education and creates an abusive educational environment, and (5) that there is a basis

---

[5] Abdullah's allegations that Rowan continually reschedules her meeting with the Dean of College Education to discuss implementing her accommodations and fails to hold the follow-up meeting reflects, at the most, "bureaucratic inaction." *S.H.,* 729 F.3d at 263. In fact, Abdullah had a meeting with the Dean to discuss "implementing her accommodations." [SAC ¶ 34.] But she offers no details about what happened at that meeting, including whether she reported Professor Jordan-Cox's refusal to implement her 504 plan for the Spring 2021 semester.

for institutional liability." *Derrick F. v. Red Lion Area Sch. Dist.*, 586 F. Supp. 2d 282, 308-09 (M.D. Pa. 2008) (quoting *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 314 (D. Mass. 1997)). In analyzing hostile learning environment claims under the ADA and RA, courts look to "Title VII hostile work environment standards." *Pell v. Trustees of Columbia Univ. in City of N.Y.*, 1998 WL 19989, at *18 (S.D.N.Y. Jan. 21, 1998) (Sotomayor, J.) (collecting cases). Harassment rises to illegal discrimination only if the environment "is permeated with 'discriminatory intimidation, ridicule, and insult,'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinso*, 477 U.S. 57, 65 (1986)), such that it "alter[s]" the learning environment, *id.* (quoting *Meritor*, 477 U.S. at 67). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" are not enough to show a discriminatory change to the learning environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation and internal quotation marks omitted). When confronted with a hostile learning environment claim, courts "consider the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether the alleged conduct is physically threatening or humiliating rather than a mere offensive utterance, and whether it interferes with the plaintiff's performance." *Guckenberger*, 957 F. Supp. at 315 (citation and internal quotation marks omitted).

Against that backdrop, Abdullah has not plausibly alleged a hostile learning environment. Indeed, the various incidents Abdullah points to are not "severe or pervasive enough" to change the conditions of her learning environment. Take Weinstein's comments for example. When Abdullah went to Rowan's Office of Accessibility Services for help, Weinstein made comments like, "[w]hy are you still here? You should be gone now[]" and "[W]hat are you doing to me! . . . [Y]ou don't need anything[]. [SAC ¶ 52(l).] Those

statements, even when viewed in Abdullah's favor, are not demeaning or humiliating. She never alleges that, despite Weinstein's comments, she was unable to obtain her accommodations at Rowan. Likewise, her allegations about other Rowan's staff comments— about not wanting to help her, *see* SAC ¶ 52(m)—are not sufficiently "extreme" to create a hostile learning environment. *See Faragher*, 524 U.S. at 788. Thus, Abdullah's allegations about a hostile learning environment are lacking. *Cf. Wright v. Providence Care Ctr., LLC*, 822 F. App'x 85, 97 (3d Cir. 2020) ("Occurrences such as being ignored, told once to 'shut up,' hearing an offhand comment about collecting disability, being temporarily pulled to work on another floor at the facility, receiving a marginally negative performance review without cause, and scheduling annoyances, while no doubt unpleasant, are not objectively 'extreme,' as is required for a viable ADA hostile workplace claim.").

In any event, Abdullah has pled no allegations that the unpleasant or unwelcome comments Rowan staff made to her negatively affected her performance. *See Guckenberger*, 957 F. Supp. at 315 (explaining courts should consider whether the discriminatory conduct "interferes with the plaintiff's performance"). Apart from Professor Jordan-Cox's refusal to implement her Section 504 plan in the Spring 2021 semester, she offers no allegations of poor performance because of her learning environment. In fact, when Rowan implements her 504 plans, she's a straight-A student. [*See* SAC ¶ 31.] So Abdullah has not plausibly alleged a hostile learning environment.

### C. Abdullah's Racial Discrimination Claim under Title VI

Abdullah claims Rowan violated Title VI of the Civil Rights Act when some of its professors refused to work with her on her dissertation entitled, "*Beyond BlackLivesMatters* [sic]: *The Autoethnography of a Black Disabled Graduate Female Student with Multiple Hidden*

*Disabilities.*" [SAC ¶¶ 43, 62(d).]  According to Abdullah, Rowan professors—who are not black—engaged in racial discrimination when they told her they could not help her with her dissertation because they are neither black nor disabled.   [*Id.* ¶¶ 42, 45.]    Because those professors refused to help, Abdullah must work on her dissertation with professors and staff she's uncomfortable working with and who—in Abdullah's view—are not qualified to help her.  [*Id.* ¶ 45.]

Rowan moves to dismiss Abdullah's Title VI claim arguing a professor's inability to assist with a dissertation topic is not a discriminatory action under Title VI.  [Rowan Br. at 16.]  Rowan also argues Abdullah has alleged no facts to show she suffered an adverse action because of her race.  [*Id.* at 16-17.]  Abdullah, in a conclusory fashion, contends she has "sufficiently" pled a Title VI claim.  [Pl.'s Opp'n Br. at 15.]  She puts the ball in Rowan's court, arguing Rowan "fails to explain how any of the alleged conduct on the part of the University does not rise to the level of actionable discrimination[.]"  [*Id.*]

This Court found Abdullah's opposition inadequate and ordered her to file a supplemental brief to explain why she failed to address Rowan's arguments that she has not established a prima facie case of racial discrimination.  [Docket No. 97.]  The Court instructed her to "point to specific allegations in the Second Amended Complaint that establish such a claim."  [*Id.*]  The Court warned Abdullah that if she failed to file the ordered supplemental briefing, the Court would treat that failure as an abandonment of her Title VI claim.  [*Id.*]  Despite that warning, Abdullah filed no supplemental briefing.

For starters, the Court finds Abdullah abandoned her Title VI claim by flouting this Court's order.  [*Id.*]  Federal Rule of Civil Procedure 41(b) authorizes district courts to dismiss a lawsuit when a litigant fails to comply with court orders.  *See also Qadr v. Overmyer*, 642 F.

App'x 100, 102 (3d Cir. 2016).  The Court has given Abdullah many extensions to respond to Rowan's and Weinstein's motions, including an extension to file the supplemental briefing on her Title VI claim.  Abdullah missed many of those deadlines, and despite this Court's warning, she failed to file the court ordered supplemental briefing.  So the Court dismisses her Title VI claim.  *See Abady v. Twp. of Manalapan*, 2007 WL 9789570, at *1-2 (D.N.J. Feb. 20, 2007) (dismissing plaintiff's lawsuit where plaintiff repeatedly violated court orders), *rep. and recommendation adopted by*, 2007 WL 9789569, at *1 (D.N.J. Mar. 7, 2007).

In any event, Abdullah has not plausibly alleged a racial discrimination claim under Title VI of the Civil Rights Act.  Title VI prohibits intentional discrimination based on race in any program that receives federal funding.  42 U.S.C. § 2000d.  To state a racial discrimination claim under Title VI in the educational setting, Abdullah must allege:  (1) she is a member of a protected class; (2) she was "qualified to continue in pursuit of [her] education;" (3) she "suffered an adverse action;" and (4) that "action occurred under circumstances giving rise to an inference of discrimination."  *Blunt v. Lower Merion Sch. Dist.*, 826 F. Supp. 2d 749, 758 (E.D. Pa. 2011) (citing *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003)), *aff'd*, 767 F.3d 247 (3d Cir. 2014).   Title VI applies only to "intentional discrimination[,]" *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001), that requires proof of either: "(1) direct evidence of willful discrimination . . .  or (2) a showing of deliberate indifference by defendants to events adverse to the plaintiff[.]"  *Williams v. Pennridge Sch. Dist.*, 782 F. App'x 120, 127 (3d Cir. 2019) (citations omitted).  "[A] 'plaintiff alleging racial or gender discrimination by a university must do more than recite conclusory assertions. . . . [T]o survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of

26

racially discriminatory intent.'" *Freckleton v. Mercy Coll. NY*, 2023 WL 2648827, at *6 (S.D.N.Y. Mar. 27, 2023) (quoting *Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 532 (S.D.N.Y. 2013)).

Abdullah offers no facts suggesting Rowan's professors or staff directly discriminated against her, like making discriminatory comments to or about her, or refusing to work with her because she's Black.    And even viewing Abdullah's allegations in her favor, her allegations about Dr. Johnson's and the other professors' supposed unwillingness to help with her dissertation reflects—at most—those professors' inability to relate to the dissertation topic because they are neither Black nor disabled.    Indeed, Abdullah's proposed dissertation is entitled, "*Beyond BlackLivesMatters* [sic]*: The Autoethnography of a Black Disabled Graduate Female Student with Multiple Hidden Disabilities.*"  [SAC ¶¶ 43, 62(d).]  A professor's inability to assist a student with a paper where the topic involves race does not amount to intentional discrimination.  *Cf. Tripp v. Long Island Univ.*, 48 F. Supp. 2d 220, 224 (E.D.N.Y.) (finding professor's actions towards African-American student—telling student she was in wrong department, criticizing her paper, and threatening her with a poor grade—insufficient to support an inference of intentional discrimination), *aff'd*, 201 F.3d 432 (2d Cir. 1999).  At any rate, Abdullah is working on her dissertation with the help of two advisors. [SAC ¶ 62(e).]

Nor does Abdullah's allegations about other graduate students support an inference of racial discrimination.  She fails to point to any similarly situated graduate students who have been treated differently because of their race.  Rather, she states "similarly situated graduate[] students" who are not black "have more latitude in selecting advisors" to help with "their dissertation."  [*Id.* ¶ 62(f).]  Abdullah provides no information on these so-called comparators.  For example, she doesn't allege that non-black graduate students who want to write about

race and disabilities managed to obtain their preferred academic advisors.  When relying on comparators to support a racial discrimination claim, a plaintiff "must allege facts sufficient to make plausible the existence of such similarly situated parties."  *See Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011); *see also Osei v. La Salle Univ.*, 493 F. App'x 292, 296 (3d Cir. 2012) (affirming dismissal of Title VI claim where plaintiff never described "how the financial aid of other students who are not members of a protected class was treated when those students enrolled in undergraduate classes outside of their programs"); *accord Does 1-2 v. Regents of the Univ. of Minn.*, 999 F.3d 571, 580-81 (8th Cir. 2021).  Because Abdullah pleads no facts to show Rowan treated similarly situated graduated students differently, her Title VI claim fails.  *See Serodio v. Rutgers*, 27 F. Supp. 3d 546, 555 (D.N.J. 2014) (finding plaintiff's Title VI claim failed as matter of law where plaintiff failed to identify any similarly situated student).

Because Abdullah has already had many opportunities to amend her Title VI claim and since she ignored this Court's order to point to facts in the SAC to support such a claim, the Court dismisses her Title VI claim with prejudice.

### D. Abdullah's Sex & Gender Discrimination Claim Under Title IX

Rowan moves to dismiss Abdullah's Title IX claim, arguing that claim fails because, among other reasons, Abdullah admits she never reported Weinstein's conduct to anyone at Rowan.  [Rowan Br. at 19 (citing SAC ¶ 70(h)).]  The Court agrees.[6]

---

[6] This Court previously ordered Abdullah to file a supplemental brief addressing her "admission in the Second Amended Complaint that she never notified any Rowan employee or administrator of Defendant's Weinstein alleged conduct."  [Docket No. 97.]  The Court warned Abdullah that if she failed to file that brief, the Court would treat her failure as abandonment of her Title IX claim. [*Id.*]  Despite that warning, Abdullah never filed the supplemental brief.

"Title IX of the Education Amendments of 1971 . . . prohibits a recipient of federal funding from discriminating on the basis of sex." *Remphrey v. Cherry Hill Twp. Bd. of Educ.*, 2017 WL 253951, at *2 (D.N.J. Jan. 20, 2017) (citation omitted). Title IX provides that "[n]o person . . . shall, on the basis of sex . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). Title IX covers sexual harassment of a student by a schoolteacher or employee and "is enforceable through private right of action for damages against [the educational institution.]" *Bostic v. Smyrna Sch. Dist.,* 418 F.3d 355, 359-60 (3d Cir. 2005) (citing *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75-76 (1992)); *see also M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020).

To prevail on a Title IX claim based on a school employee's sexual harassment, Abdullah must show: (1) Rowan had "actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived [her] of access to the educational benefits or opportunities provided by the school." *E.R. v. Lopatcong Twp. Middle Sch.*, 2015 WL 4619665, at *3 (D.N.J. July 31, 2014) (quoting *Murrell v. Sch. Dist. No. I, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999)); *see also Handley*, 2022 WL 4115730, at *6-7. Abdullah must also show that an "appropriate person" had "actual knowledge of the sex-based harassment," *see M.S.*, 969 F.3d at 125, because Congress never "intended to allow recovery in damages [in a Title IX action] where liability rests solely on principles of vicarious liability or constructive notice," *see Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 288 (1998). "An appropriate person is 'an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf.'" *M.S.*, 969 F.3d at 125-26 (quoting *Gebser*, 524 U.S. at 290). The alleged

sexual harasser "is *not* an appropriate person for assessing a school district's Title IX liability in a private right of action." *Id.* at 126 (emphasis original).

Abdullah's Title IX claim fails because she has not alleged that any appropriate person at Rowan knew that Weinstein allegedly sexually harassed her. Indeed, Abdullah admits she never disclosed Weinstein's conduct to anyone at Rowan. [SAC ¶ 70(h).] Without an allegation that Rowan knew about Weinstein's conduct, her Title IX claim must be dismissed. *Handley*, 2022 WL 4115730, at *7 (dismissing plaintiff's Title IX claim against Rowan because plaintiff failed to allege what school officials "knew of the alleged harassment and when"); *see also Doe 3 v. Bd. of Educ. of Vocational-Tech. Sch. Dist. in Cty. of Gloucester*, 2018 WL 3218692, at *2 (D.N.J. July 2, 2018) (dismissing Title IX claim because plaintiff "failed to set forth a single fact alleging that [school] and [school board] had actual knowledge of, let alone were deliberately indifferent to, [harasser's] conduct"). While Abdullah complained to Weinstein about his conduct, like telling him to "stop" and "no," *see* SAC ¶ 70(e)-(f), Weinstein, as the alleged harasser, is not an "appropriate person" to report Title IX violations. *M.S.*, 969 F.3d at 128 ("[School assistant principal and teacher,] as the wrongdoer, is not an appropriate person for purposes of the Title IX analysis."). So the Court dismisses her Title IX claim with prejudice.

### E. Abdullah's Substantive and Procedural Due Process Violations Claims

#### 1. *State-Created Danger Claim against Rowan and Weinstein*

Abdullah claims Rowan and Weinstein violated her substantive due process rights "to bodily integrity and freedom from sexual contact[.]" [SAC ¶ 76(g).] According to Abdullah, Rowan violated her substantive due process rights by allowing Weinstein to sexually harass her and providing him an opportunity to do so. [*Id.* ¶ 76(b).] Weinstein, a "state actor"

according to Abdullah, violated her substantive due process rights by sexually harassing her. [*Id.* ¶ 76(c)-(e).]

Rowan argues Abdullah's state-created danger claim fails because, among other reasons, she concedes that she never reported Weinstein's conduct to Rowan, and so, Rowan couldn't have been on notice that its failure to act could cause harm. [Rowan Br. at 26-27.] It also contends that even if Abdullah had notified Rowan, the university's conduct, at best, amounts to a mere failure to intervene—insufficient to support a state-created danger claim. [*Id.* at 27.] Weinstein too argues Abdullah's state-created danger claim fails because she concedes he is a state actor. [Weinstein Mem. of Law in Support of Mot. to Dismiss 11-12 (Weinstein Br.) (Docket No. 77-1).] He adds his alleged inappropriate conduct doesn't shock the conscience as a matter of law, and therefore, Abdullah cannot maintain a state-created danger claim against him. [*Id.*]

A state-created danger claim is one exception to the general rule that "the Due Process Clause does not impose an affirmative obligation on the state to protect its citizens." *Philips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008). To plead a state-created danger claim, a plaintiff must allege:

1. the harm ultimately caused was foreseeable and fairly direct;

2. a state actor acted with a degree of culpability that shocks the conscience;

3. a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; ***and***

4. a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 242 (3d Cir. 2016) (emphasis added) (citing *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281–82 (3d Cir. 2006)).

"The state-created danger doctrine does not reach failures to intervene." *Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*, 765 F. App'x 802, 809–10 (3d Cir. 2019); *see also Morrow v. Balaski*, 719 F.3d 160, 179 (3d Cir. 2013) (rejecting plaintiffs' "attempt[] to morph passive inaction into affirmative acts").  Nor does the doctrine apply when the state actor is "directly responsible for causing the harm."  *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 928 (10th Cir. 2012); *see also Jowett v. Churchill*, 2021 WL 3879084, at *7 (D.N.J. Aug. 31, 2021) ("A public employee, acting as a state actor, cannot cause a 'private harm'" (citing *Henry v. City of Erie*, 728 F.3d 275, 286 (3d Cir. 2013))); *accord Mintz v. Upper Mount Bethel Twp.*, 2013 WL 3090720, at *6-7 (E.D. Pa. June 20, 2013) (dismissing state-created danger claim where state actor was directly responsible for harm).  "This is [so] because the state actor directly responsible for the deprivation of life, liberty, or property may be held personally liable under § 1983." *Gray*, 672 F.3d at 928.

Starting with Weinstein, the Court dismisses the state-created danger claim against him.[7]  In the SAC, Abdullah claims Weinstein sexually harassed her while he was employed by Rowan, and therefore a "state actor."  [SAC ¶ 76(c)-(e).]  Because Abdullah claims a state actor caused her direct harm, her state-created danger claim against Weinstein fails.  *Jowett*, 2021 WL 3879084, at *7 (dismissing state-created danger claim where state actor caused harm); *accord Doxtator v. O'Brien*, 39 F.4th 852, 866-67 (7th Cir. 2022) (affirming dismissal of

---

[7] The Court previously ordered Abdullah to address Weinstein's argument that her state-created danger claim against him fails since he allegedly caused the harm while working as a Rowan employee.  [Docket No. 97.]  The Court warned Abdullah that if she failed to file a supplemental brief, the Court would treat that failure as abandonment of her state-created danger claim. [*Id.*]  Again, despite that warning, Abdullah never filed the supplemental brief.

state-created danger claim against municipality and police officers finding the state-created danger doctrine inapplicable because police officers caused the harm).  This Court previously dismissed a state-created danger claim against Weinstein based on allegations that he sexually harassed another student while employed by Rowan.  *Handley*, 2022 WL 4115730, at *10-11.

Turning to Rowan, the Court dismisses the state-created danger claim against it because Abdullah has not alleged, among other things, that her harm was foreseeable.  "To satisfy the 'foreseeable' prong [for a state-created danger claim], the plaintiff must 'allege an awareness on the part of the state actors that rises to level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm.'"  *Quinn v. Badolato*, 709 F. App'x 126, 129 (3d Cir. 2017) (quoting *Phillips*, 515 F.3d at 238).   Abdullah admits she never notified anyone at Rowan about Weinstein's alleged sexual harassment.  [SAC ¶ 70(h).]  Nor has she plausibly alleged facts suggesting Rowan knew that Weinstein posed a risk of sexually harassing students.  Therefore, her state-created danger claim against Rowan fails.  *Handley*, 2022 WL 4115730, at *9 (dismissing § 1983 state-created danger claim against Rowan because plaintiff "failed to alleged that Rowan was aware of Weinstein's alleged conduct such that Rowan could be liable for a state-created danger claim"); *see also E.R.*, 2015 WL 4619665, at *6 (dismissing § 1983 state-created danger claim against school and schoolboard because, among other things, plaintiff failed to allege defendants had actual knowledge that teacher sexually abused plaintiff); *Graham v. Huevel*, 2011 WL 1256607, at *6 (D.N.J. Mar. 28, 2011) (dismissing § 1983 state-created danger claim because, among other reasons, plaintiff failed to allege that defendants "actually knew or even reasonably could have known that [teacher] might pose a danger to [student]").

### 2. *Abdullah's Procedural Due Process Claim against Rowan*

Abdullah claims Rowan violated her procedural due process rights by conducting a "sham" Title IX investigation into Weinstein's conduct.  [SAC ¶ 76(h).]  Rowan moves to dismiss this claim, contending Abdullah cannot show Rowan deprived her of a protected interest.  [Rowan Br. at 28.]  Rowan explains that Abdullah participated in the Title IX investigation, and while she may be unhappy with the investigation, she doesn't "have a due process right to an investigation being performed in a particular manner or within a particular period of time." [*Id.* at 29.]   In her opposition, Abdullah never addresses Rowan's argument supporting dismissal of her procedural due process claim.  [Pl. Br. at 17-18.]  Given that failure, this Court specifically ordered Abdullah to explain why the Court should not treat her procedural due process claim "as abandoned" since she failed to address that claim in her opposition. [Docket No. 97.]  Abdullah never complied with that Order.

When a plaintiff, like Abdullah does here, fails to respond to arguments supporting dismissal of a claim, courts treat that failure as an abandonment of the claim.  *See, e.g.*, *Michel v. Wicke*, 2011 WL 3163236, at *2 (D.N.J. July 25, 2011) ("Plaintiff fails to address this issue in his opposition to the Motion to Dismiss. As such, this argument is deemed abandoned by the court."); *see also Depalma v. N.J. Tpk. Auth.*, 2020 WL 6689800, at *7 (D.N.J. Nov. 13, 2020).  The failure to oppose a motion to dismiss— like waiving the white flag of surrender— signals to the Court that the party cannot defend the claim (or didn't mean to bring it), and thus the claim should be dismissed.  So by twice failing to respond to Rowan's arguments supporting dismissal of her procedural due process claim, Abdullah has abandoned that claim, and this Court will dismiss it with prejudice.  *Depalma*, 2020 WL 6689800, at *7.

34

### F. Abdullah's State-Law Claims

Abdullah concedes her state-law claims "must be dismissed with prejudice" for failing to comply with New Jersey's Tort Claims Act. [Pl.'s Opp'n Br. at 5, 18.]  This Court twice ordered Abdullah to file a stipulation of dismissal. [Docket Nos. 97, 100.]  Again, Abdullah has ignored this Court's Orders.  In any event, given Abdullah's admission that her state-law claims "fail" and must be dismissed, *see* Pl.'s Opp'n Br. at 5, 18, the Court dismisses those claims with prejudice under Federal Rule of Civil Procedure 41.

## III.  CONCLUSION

For the above reasons, the Court **GRANTS**, **in part**, and **DENIES**, **in part**, Rowan's motion to dismiss (Docket No. 78) and **GRANTS** Weinstein's entire motion to dismiss (Docket No. 77).  An accompanying Order of today's date shall issue.

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge

Dated: November 12, 2024

35